**FOR PUBLICATION**

---

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

FILED
JAMES J. WALDRON

FEB - 2 2011

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

---

| | |
|---|---|
| In re | Case No.:    08-18384 MS |
| RALPH M. DAY, SR., | Chapter 7 |
|          Debtor. | |

---

ROBERT B. WASSERMAN, Chapter 7 Trustee,

              Plaintiff,

v.

LOUIS A. CAPAZZI, JR., ESQ., ANN CAPAZZI,
JESSICA GALLO and HSBC BANK USA,
NATIONAL ASSOCIATION AS TRUSTEE FOR
THE HOLDERS OF THE CERTIFICATES ISSUED
BY DEUTSCHE ALT-A SECURITIES MORTGAGE
LOAN TRUST, SERIES 2007-1,

              Defendants.

Adv. Pro. No.: 10-1479 MS

# O P I N I O N

## APPEARANCES

**WASSERMAN, JURISTA & STOLTZ, PC**
Scott S. Rever, Esq.
225 Millburn Avenue
P.O. Box 1029
Millburn, NJ 07041
Counsel for Robert B. Wasserman, Chapter 7 Trustee

**FINESTEIN & MALLOY, LLC**
Michael D. Malloy, Esq.
70 South Orange Avenue
Livingston, NJ 07039
Counsel for HSBC Bank USA

**HONORABLE MORRIS STERN, Bankruptcy Judge**

## I.    INTRODUCTION.

The trustee in bankruptcy, as a hypothetical judicial lien creditor, as one who executes,

and as a bona fide purchaser of real property (all per 11 U.S.C. § 544(a)), often competes for

personal and real property with those who would claim equitable interests in such property. *Sub*

*judice*, a lending bank claims that its intended mortgage transaction generated a trustee-trumping

equitable lien.  In the transaction gone haywire, the lender received a mortgage document from

an out-of-title "mortgagor," while providing funds which paid off and caused the discharge of

record of a preexisting mortgage on the subject real property.  As an equitable lien holder, the

bank challenges the trustee's avoidance claims based upon the trustee's status of bona fide

purchaser ("BFP").

Sensing the weakness in its argument (but not abandoning its position as an equitable lien

holder), the bank next argues that only legal title to the subject real property is property of the

bankrupt estate, thus attempting to reduce the trustee's hypothetical purchase to that of a limited

interest (that is, legal title already encumbered by a "constructive trust").  Section 541(d) of the

Bankruptcy Code is the legal linchpin to this contention; factually, the bank relies, not on its

equitable lienor position, but on the position taken by a business associate of the debtor.  The

associate claims that the debtor was to take title *as a placeholder* for an entity (jointly owned by

2

the debtor and this colleague), which had funded the real estate purchase and its maintenance.

Bypassing the issue of the bank's standing to assert this claim, the intersection of concepts of

constructive trust, property of the estate, and bona fide purchaser presents some complexity. In

the end, however, under the circumstances of this proceeding, neither of the bank's equitable

arguments overcomes the trustee's BFP position.

## II.   STATEMENT OF PROCEDURE AND FACTS.

This matter comes before the court on the motion for summary judgment filed by Robert

B. Wasserman, Esq., Chapter 7 trustee for the estate of debtor Ralph Day. The trustee moves

against defendants Louis A. Capazzi, Jr., Esq., Ann Capazzi (his wife), and HSBC Bank USA,

N.A., on all relevant counts of the trustee's adversary proceeding complaint brought to determine

the validity, priority and extent of the defendants' liens on and interests in a parcel of land in

Closter, New Jersey. In particular the trustee moves to avoid pursuant to Code § 544(a)(3) any

interests of Capazzi and the Bank in the property. This court has jurisdiction here pursuant to

28 U.S.C. § 1334(b) and this District's July 23, 1984 Order of Reference. This is a core

proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (K) and (O).

Day filed a petition in bankruptcy under Chapter 11 on May 6, 2008. After months of

efforts at reorganization, first with Day as debtor-in-possession and then with a Chapter 11

trustee, the case was converted to Chapter 7 on February 9, 2010.

During the pendency of the Chapter 11 phase of this case, the court authorized the trustee

to retain special counsel to prosecute a matter for recovery of property in the Superior Court of

New Jersey on behalf of the estate. A complaint was filed on May 20, 2009, alleging various

causes against Capazzi and others arising out of Day-Capazzi business ventures related to a

number of real estate developments. Ultimately, Durie, LLC, was included as a defendant. Durie, jointly owned by Day and Capazzi, figures prominently in the Closter property controversy which is isolated in this adversary proceeding. Among other state court pleadings, Capazzi (for himself and Durie) has counterclaimed against the debtor (and presumably the trustee). This state court case is ongoing.

On April 6, 2010 the trustee filed the instant adversary proceeding. Defaults were entered against *all* defendants on May 17, 2010, and the trustee sought entry of default judgments against them. On July 8, 2010 the Capazzis filed a motion to vacate the entry of default, and the trustee objected. In papers asserting the existence of a valid defense, Capazzi claimed that the here-targeted Closter property was protected from the trustee's avoidance powers because it was subject to a constructive trust for the benefit of Durie. On August 25, 2010 the court vacated the entry of default against the Capazzis, who then filed an answer on September 1, 2010. On September 7, 2010 the trustee and the bank entered a Consent Order vacating the default against the bank, which then answered and counterclaimed for a declaration that the bank has a first priority mortgage for $491,575 or, in the alternative, a priority equitable lien for that amount.

The instant motion for summary judgment was filed on October 21, 2010 seeking judgment on all relevant counts of the complaint against the Capazzis and HSBC. Only HSBC responded.[1]

The Closter property was *specifically conveyed to the debtor* by third parties by deed dated June 16, 2005, duly recorded on September 26, 2005. Adv. Pro. dkt. 22 (trustee's cert. in

---

[1]To the extent that the bank would rely on Capazzi's certification submitted in support of his motion to vacate the earlier default, the court will consider the record on that motion as being incorporated here. Morever, the main case docket is a source of basic background.

opposition to Capazzis' motion to vacate entry of default, Ex. A). Day (and his wife) granted

Countrywide Home Loans, Inc. a mortgage on the property securing a debt of $637,500. That

mortgage was recorded on June 7, 2005 *(id.* at Ex. E).

On or about February 28, 2007 HSBC extended a loan to Ann Capazzi for $675,000 and

took an instrument purporting to be a mortgage from Ann on the Closter property. *See* Adv. Pro.

dkt. 46, Ex. B.  A HUD-1 Uniform Settlement Statement of February 28, 2007 indicates that

funds advanced by HSBC were used to pay off the mortgage loan due Countrywide,  in the

amount of $491,575. *See* Adv. Pro. dkt. 22, Ex. D.  No party disputes that payoff.

Capazzi's view of the acquisition, financing and ownership of the Closter property (a

view adopted for motion purposes by the bank), is as follows:

> 4.  The Debtor and I recognized an opportunity in the 666 Closter Dock Road property (the "Property"), and, in furtherance of the venture, arranged for its purchase.

> 5.  The purchase of the Property was structured so that title was initially placed in the name of the Debtor, to hold for Durie, at Durie's expense and for Durie's sole benefit.

> 6.  When attempting to refinance the Property, because the Debtor did not have adequate credit, it was decided that title to the Property should be transferred from the Debtor to my wife, defendant Ann Capazzi ("Ann"), to which the Debtor agreed, with the universal understanding that the holder of title to the Property took title in name only, for the benefit of Durie, and that the titleholder was not to personally benefit in any way.

Adv. Pro. dkt. 20, ¶¶ 4-6 (Capazzi's cert. supporting his motion to vacate default).

Ultimately, a title report commissioned by the trustee revealed that the debtor was the

record owner of the subject property as of the petition date. Adv. Pro. dkt. 22, ¶¶ 2 and 3.  The

bank acknowledges that the Countrywide mortgage was discharged of record and that it took the

February 2007 "mortgage" from an out-of-title party. This state of the property's title is

confirmed by the trustee's title report. Adv. Pro. dkt. 22, ¶¶ 2 and 6.

## III.   DISCUSSION.

### A.   HSBC's Claim of Priority For Its Equitable Lien or Interest.

HSBC forthrightly states its position relative to that of the trustee as a bona fide purchaser

for value (per 11 U.S.C. § 544 (a)(3)), as follows:

> HSBC does not dispute the fact that its mortgage was not recorded
> when the debtor filed his bankruptcy petition in May 2008, nor does
> the bank take issue with the trustee's status as a hypothetical bona fide
> purchaser for value as of the petition date. . . . HSBC reasonably
> assumes that, for his part, the trustee does not dispute that HSBC is
> the holder of an equitable lien on the subject property, to the extent
> that the proceeds of its loan paid off an existing mortgage that was
> held by Countrywide . . . in the amount of $491,575.59. (The original
> principal amount of the HSBC loan was $675,000.00). . . . Where the
> trustee and the bank part company is in the analysis of the priority
> contest between the trustee as hypothetical BFP and the bank as
> equitable subrogee.

Adv. Pro. dkt 46 at 1.

The trustee relies almost exclusively on *In re Bridge*, 18 F.3d 195 (3d Cir. 1994). There,

the lending bank provided a construction loan to the debtor secured by a duly recorded mortgage

on his real property. When, in the following year, the loan was recast by the same lender, the

new proceeds were used to pay off the original debt and the mortgage was discharged. Though a

new mortgage was intended, that mortgage was unrecorded when the debtor's Chapter 7

bankruptcy filing intervened. That set up a clash between the bank as an equitable lien holder

(and one who asserted equitable subrogation to the position of the earlier discharged mortgage)

and the trustee in his status as a BFP.

6

The *Bridge* Court first addressed the question of whether state or federal law determines

the scope of the trustee's § 544(a) avoidance powers.

> Although we recognize that historically the bankruptcy laws have been
> hostile to secret liens and that the case law has recognized the power
> of the trustee to defeat unprotected liens, we disagree that this means
> that federal law determines the scope of a trustee's avoidance powers.

*Id.* at 199.  The Court perceived that the 1978 Bankruptcy Reform Act's complete omission of

the predecessor Act's policy statement regarding nonrecognition of equitable liens "where there

were available means of perfecting legal liens,"[2] an oft-quoted snippet of the 1978 Bankruptcy

Reform Act's legislative history,[3] language unique to the BFP provision of § 544(a)(3),[4] and

post-Bankruptcy Code case law, provided the following answer:

> It is thus clear from the legislative history of the 1978 Act and from
> case law that although the trustee's strong arm powers arise under
> federal law, the scope of these avoidance powers vis-a-vis third parties
> is governed entirely by the substantive law of the state in which the
> property in question is located as of the bankruptcy petition's filing.

---

[2]18 F.3d at 199.

[3]

> [A]s the legislative history of the Bankruptcy Reform Act of 1978 shows,
> Congress intended that the strong arm provisions "should not require a
> transferee to perfect a transfer against an entity with respect to which
> applicable law[, i.e., state law,] does not permit perfection." 124 Cong.
> Rec. 32,400 (1978) (statement of Rep. Don Edwards of California, a
> sponsor of the proposed Code), *reprinted in* 1978 U.S.C.C.A.N. 5963,
> 6456.

18 F.3d at 199-200.

[4]

> Similarly, the language "against whom applicable law permits such transfer
> to be perfected," was included in § 544(a)(3) "so as not to require a creditor
> to perform the impossible in order to perfect his interest."

18 F.3d at 200 (citing back to the legislative history set forth at n.3, *supra*).

*Id.* at 200.

After it was determined in *Bridge* that state substantive law controls, the Court delved

into the New Jersey law of mortgages (the applicable law both there and *sub judice),* concluding:

(i)     New Jersey is a lien theory state (legal title and all incidents
        of ownership to mortgaged real property remaining with the
        mortgagor until default or other breach), 18 F.3d at 200;

(ii)    Generally, where there is payoff and discharge of a preexisting
        mortgage and it is intended that new security will be relied
        upon, there is no subrogation, *id.* at 201;

(iii)   However, where the new security fails because of fraud or
        mistake equity could with "discretion" intervene, but "always
        with due regard to the legal and equitable rights of others,"
        citing and quoting *Gaskill v. Wales,* 36 N.J. Eq. 527, 533
        (E&A 1883), *ibid.;*[5] and

(iv)    While the law of personal property/equitable subrogation was
        distinguished,[6] *id.* at 202-04, *Gaskill's* principles favoring the
        BFP over an unrecorded equitable interest holder in real
        property were deemed determinative.

Embedded in *Gaskill* (and its progeny) is the fundamental point that, absent notice, *purchasers of*

*real estate* "had a right to rely on the condition of the [real estate] *records,* and having done so

they cannot be defeated or prejudiced by a latent equity." *(Emphasis added here* to *Gaskill,* 36

---

[5] *Bridge* provides a short catalog of cases where New Jersey courts had implemented equitable subrogation, at 18 F.3d at 201 n.4; these cases reflect the relatively weak position of the judgment lien creditor who fortuitously gains priority in situations of fraud or mistake. The intervening knowledge or notice of events is also considered.

[6] *See Kaplan v. Walker,* 164 N.J. Super. 130 (App. Div. 1978), though not deemed "inapposite" by the Third Circuit, readily distinguished in *Bridge. Kaplan* involved a contest between a receiver appointed for the owner of a motor vehicle and a would-be secured creditor who paid off a lien encumbering the vehicle but failed to record its own lien. The receiver having the power of a hypothetical lien creditor, lost the contest with the subrogated preexisting creditor. As a *personal property* case, *pitting two would-be lien creditors against one another* (and not involving any BFP) *Kaplan* was unconvincing as precedent in *Bridge.*

N.J. Eq. at 533-34, quoted in *Bridge, see* 18 F.3d at 203.)  There is thus some understandable

intersection of this area of law and equity with the state recording acts.  *See* N.J.S.A. 46:16-1 and

46:22-1, in particular.

HSBC  tries to distinguish *Bridge*, claiming that, because the bank took a mortgage from

Ann Capazzi (while debtor Day was the legal title holder), it could not record the mortgage so as

to be in the real property's chain of title.  Therefore, as the argument goes, it held an

"unrecordable" document.  At the root of this argument is *Bridge's* reference in dictum to *L.D.*

*Patella Const. Corp.*, 114 B.R. 53, 58-59 (Bankr. D.N.J. 1990).  18 F.3d at 203 n.6.

*L.D. Patella* pitted the bankruptcy BFP against a real estate broker whose listing

agreement was deemed both severable from an agreement for the sale of real estate (though part

of that sale agreement) and not recordable under N.J.S.A. 46:16-1.  In finding that an equitable

lien both arose out of the brokerage agreement and took priority over the BFP, the bankruptcy

court seems to have overstated the reach of N.J.S.A. 46:22-1 while disregarding the longstanding

New Jersey common law favoring the BFP.  Though N.J.S.A. 46:22-1 voids unrecorded

instruments (of those types recordable under 46:16-1[7]) as against deeds recorded by BFPs,[8]  the

fact that a writing (in *L.D. Patella* the brokerage agreement) is not recordable per N.J.S.A.

46:16-1 (and hence is not *by N.J.S.A. 46:22-1 so voided*) does not, as the case broadly proclaims,

give it a *priority* over the BFP.  *L.D. Patella's* conclusion "appears incorrect."  Weinstein, *Law*

---

[7]*Consider* N.J.S.A. 46:16-1.1 (allowing for recordation of judgments, among other writings), and
*Sonderman v. Remington Const. Co., Inc.*, 127 N.J. 96 (1992) (regarding nonmonetary judgments
affecting real property), and *Gibau v. Klein*, 329 N.J. Super. 227 (App. Div. 2000), *cert. denied*, 165 N.J.
486 (2000). See discussion in Part III (B)(4), *infra*.

[8]Judgment creditors without notice and others as well benefit from the avoidance occasioned by
this statute.

*of Mortgages*, (N.J. Practice Series, Vol. 29, 2d Ed.) (hereinafter "*Weinstein*, § __") § 10.2 at 540 n.6. The New Jersey common law favoring the BFP (stressing the absence of actual or constructive notice and the proffering of value)[9] thus remains effective and dispositive in the immediate circumstances. This proposition will be revisited hereinafter at Point III, *infra*. However, for present purposes, even under the referenced recording statutes HSBC's equitable lien argument is defeated.

It is abundantly clear that HSBC intended to make a mortgage-backed loan, then documented the transaction in which it took a mortgage instrument. The fact that the transaction and thus the instrument were flawed does not make the mortgage something other than *a type* of instrument recordable under N.J.S.A. 46:16-1. In N.J.S.A. 46:22-1 statutory terms, it is an instrument "of the nature or description set forth" in N.J.S.A. 46:16-1. The intent and nature of the loan transaction, and the form of the instrument taken, control under the circumstances of this proceeding. Therefore, N.J.S.A. 46:22-1 applies to void the unrecorded mortgage and resolve HSBC's equitable lien-based claim[10] in favor of the BFP trustee. It would indeed make little

---

[9] *Bridge* makes it clear that the trustee is *deemed to have given value as a BFP per* § 544(a)(3), and to have notice of only that which a title search would reveal. 18 F.3d at 204 (text and n.7).

[10] The bank also argues that its loan under these circumstances entitles it to a constructive trust, footing its conclusion in "unjust enrichment" of the estate and broad references to *In re DeLauro*, 207 B.R. 412 (Bankr. D.N.J. 1997) and *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039 (3d Cir. 1993). Those cases are discussed, *infra*. As to unjust enrichment, the estate *sub judice* is no more "unjustly enriched" than was the *Bridge* estate. Indeed, each time a bankruptcy trustee avoids a lien using § 544(a) the potential exists for the same argument, i.e., that the affected lienor has lost the benefit of its collateral while the estate has retained the lienor's "contribution." Other creditors, too, impacted by bankruptcy often complain that they have contributed "disproportionately" to the estate (particularly as the debtor cascades towards bankruptcy). Bankruptcy cannot be made susceptible to such an overgeneralized application of "equity," *nor should bankruptcy, as a multi-interest community process, be readily subject (without substantial forethought) to a range of equitable applications which might otherwise be appropriate in two-party disputes.* Moreover, constructive trust remedies are not available in garden-variety circumstances. In any event, HSBC was a *lender* with full capability to secure properly its

10

sense to avoid, as in *Bridge*, the well-drafted but unrecorded mortgage, while deeming a

wrongheaded unrecorded mortgage such as the one taken here by HSBC, as skirting the effect of

this recording act. *See, generally, Weinstein*, § 10.9 regarding "record chain of title."

**B.    HSBC's Assertion That the Trustee's BFP Status Is Ineffective Because the Debtor Held Only Bare Legal Title.**

HSBC argues the Capazzi position that Day was the holder of only bare legal title to the

subject property.[11]  Though not fully articulated, the complete argument would presumably be as

follows:

(i)     Day and Capazzi intended that Day take title in anticipation of a transfer to their jointly owned operating entity;

(ii)    This court should thus impress a constructive trust on Day's title for the benefit of the Day-Capazzi entity;

(iii)   The constructive trust should be deemed effective *nunc pro tunc* to the prepetition date when Day took title (thus limiting property of Day's bankruptcy estate under Code § 541(a) as per § 541(d)[12]);

---

loan – or withhold funds – and, if it was denied its mortgage by the mistake or fraud of *its* disbursing agent, no equitable fix is or should be available to it under these circumstances to defeat the policy protected interest of a subsequent BFP.

[11]Though there is a substantial issue of HSBC's standing to argue Capazzi's earlier-proffered point, the court will address substance.

[12]Sections 541(a)(1) and (d) provide as follows:

(a)  The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(d) Property in which the debtor holds, as of the commencement of the case, only

> (iv)    Recording statutes do not apply to such oral trust arrangements[13] (nor to court-imposed constructive trusts); and
>
> (v)    Constructive trusts should, generally, prevail over subsequent BFPs of real property, and should in particular prevail over bankruptcy trustees asserting hypothetical BFP status.

This construct is ill-conceived and wrong, as explained below.

1.    **Under What Circumstances, If Any, Should a Bankruptcy Court Entertain a Postpetition Request for the Equitable Remedy of Constructive Trust (Which Would Relate Back to a Prepetition Date and Thus Impact Upon Property of the Estate)?**

Suggesting a legislative change to the Code, one commentator offered that "[a]t a minimum, only property which is the subject of a prepetition final order specifically imposing a constructive trust should be excluded from the estate, or result in a special priority for claimant." Keach, "*The Continued Unsettled State of Constructive Trusts in Bankruptcy: Of Butner, Federal Interests and the Need for Uniformity,*" 103 COM. L.J. 411, 448 (1998). There is, in fact, longstanding (though controversial) precedent for such a bright line test. *See In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994).[14] The state of the law remains unsettled, nonuniform

---

legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

[13]If in *writing*, the trust agreement would qualify as an instrument "of the nature" included in N.J.S.A. 46:16-1 and would then if unrecorded be trumped by the BFP per N.J.S.A. 46:22-1.

[14]In *Omegas* a creditor claimed to have been defrauded by the debtor, that fraud prompting the creditor's investment with the debtor who was said to have been planning imminent bankruptcy. The bankruptcy court impressed a constructive trust on the invested funds. The Sixth Circuit reversed, first quoting *In re Stotler and Co.*, 144 B.R. 385, 388 (N.D. Ill. 1992) ("[A] constructive trust is

and essentially without standards. *See In re Dwek*, 2009 WL 1119422*3 (Bankr. D.N.J. April

27, 2009).

At a minimum, the greatest caution should be exercised before bankruptcy courts enter

the postpetition thicket to remediate by establishing, *in the first instance*, a constructive trust.

Indeed, many of the purported precedential cases for any such extraordinary bankruptcy court

actions have tight tethering to prepetition judicial determinations, well-established prepetition

federal or state statutory or regulatory policy regimes, or the clearest footing in trust law. *See,

generally, In re Pemaquid Underwriting Brokerage, Inc.*, 319 B.R. 824, 844 (Bankr. D.N.J.

2005).

> ### 2.   What Is the Interaction of the § 541(d) Equitable Interest Exclusion From Property of the Estate and the Hypothetical Creditor and BFP Statuses of the Bankruptcy Trustee under § 544(a)?

The Third Circuit Court of Appeals, in what appears to be dictum, has put forth the

following proposition:

> Section 541(d)'s limitation on the scope of the bankruptcy estate
> prevails over the trustee's strong-arm powers under section 544 of the
> Code. *See Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1013
> (5th Cir. 1985).

---

fundamentally at odds with the general goals of the Bankruptcy Code," i.e., ratable distribution), and then
stating:

> Because a constructive trust, unlike an express trust, is a remedy, it does
> not exist until a plaintiff obtains a judicial decision finding him to be
> entitled to a judgment "impressing" defendant's property or assets with a
> constructive trust.   Therefore, a creditor's claim of entitlement to a
> constructive trust is not an "equitable interest" in the debtor's estate
> existing prepetition, excluded from the estate under § 541(d).

16 F.3d at 1451.

*Universal Bonding Ins. Co. v. Gittens and Sprinkle Enter., Inc.*, 960 F.2d 366, 372 n.2 (3d Cir.

1992). The *Quality Holstein Leasing* discussion of § 541(d), in turn, has been viewed as dictum.

*Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989).

The *Belisle* Court saw no conflict between the two Code sections, where *Quality Holstein*

*Leasing* seemed to indicate otherwise (by offering that one would "prevail" over the other). In

particular, the Seventh Circuit took issue with the breadth of the Fifth Circuit's statement that

"Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor

did not own." *Quality Holstein Leasing*, 752 F.2d at 1013. *Belisle* made the solid point that

"[t]he estate gets what the debtor could *convey* under local law rather than what the debtor *owned*

under local law." 877 F.2d at 516 (emphasis in original). In effect, *Belisle* reconciled the Code

provisions by examining how the applicable law would position any of the § 544(a) hypotheticals

against challengers to property who would assert their various positions (e.g., those based in

case-established equity or statute or any persisting judicial determination). This analysis, of

course, requires delving into how state law regards (i) the judgment lien creditor against its

challengers particularly as to personalty, and (ii) the BFP of real property against its

challengers.[15]

The facts of *Belisle* parallel those alleged by Capazzi *sub judice*. The debtor in *Belisle*

"bamboozled" his partners, using partnership funds to acquire leaseholds for his own benefit.

The partners argued that § 541(d) kept the leaseholds from the bankruptcy estate and that

---

[15]*See Belisle*, 877 F.2d at 514-15, providing first, by way of illustration, the trumping by the
owners of a stolen ring held by the debtor over the § 544(a)(1) and (2) judgment creditor (exemplifying
black letter law as to stolen personalty and "title"), and then showing a different result with the
§ 544(a)(3) BFP of *real property*.

§ 544(a) could not be utilized by the trustee.  That argument failed.  Virgin Island law, as the

applicable law, impressed a constructive trust (apparently *not* the subject of a prepetition

determination); nevertheless, under V.I. statutory real estate and partnership law, a BFP would

"prevail."[16]  Hence, the equitable interest holder in real estate assets would lose its position to the

trustee by virtue of the debtor's power (per applicable law) to transfer "good" title,

notwithstanding his ownership of only legal title subject to a constructive trust.

  *Quality Holstein Leasing* involved *personalty*, juxtaposing a Chapter 11 trustee against a

would-be secured party who claimed to have been defrauded into releasing title to a certain

aircraft.  Though ultimately finding for the trustee (because the purported fraud was remote from

the claimant), the Court's dictum appears to conceive of a need to assess whether § 544(a)

"overrides the exclusionary effect of section 541 in the instance of a valid constructive trust

created under state law." 752 F.3d at 1013.  Significantly, the case examined only the

§ 544(a)(1) and (2) *judgment lien creditor* status of the trustee – a universally "weaker" position

than that of a BFP.  Differences in the law of real property (e.g., *Belisle* of the Seventh Circuit)

versus personal property as focused on by the Fifth Circuit are most significant.

  The Third Circuit in *Universal Bonding*, while referencing the Fifth Circuit's dictum, had

no need to address § 544(a).  This case, much like *Columbia Gas* which followed a year or so

later, examined issues of property of the estate and the § 541(d) equitable exclusion *only*.  The

Chapter 11 debtor-in-possession's efforts to collect, postpetition, and use for reorganization

purposes contract balances due from state, municipal, and federal agencies for bonded work was

---

[16]This is not a determination which elevates § 544(a) over § 541(d), but rather performs the
time-honored court function of reconciling provisions of the same comprehensive statutory scheme.

the focus of *Universal Bonding*. The Court ruled that the payments would become subject to equitable trust only upon payment. No *analysis* of the position of a hypothetical executing judgment creditor (the debtor-in-possession via § 544(a)(1) and (2)) was offered (though the Court felt compelled to cite *Quality Holstein Leasing* and its elevation of § 541(d) over § 544(a)). It stands to reason, given the substantial body of statutory and case law protecting unpaid laborers and materialmen, that any such challenge would not have been fruitful.

Columbia Gas excluded from the estate of a Chapter 11 gas pipeline operator certain amounts deemed held in trust by the debtor pursuant to Federal Energy Regulatory Commission tariff orders. Again, no challenge was mounted through the "trustee's arsenal" of § 544(a); § 541(d) culled from the debtor's estate the tariff-mandated customer refunds and amounts due a research organization. As with the policy protected trust funds in *Universal Bonding*, it is not readily conceivable that these funds would be susceptible to a priming execution by a judgment creditor. These cases could well be viewed as rarities involving clearly defined policy-laden matters reflected in statute or regulation. Yet, as will be set forth *infra*, there are garden-variety bankruptcy cases which press the purported prevalence of § 541(d) in support of equitable interest holders and adverse to the trustee's § 544(a) arsenal. For present purposes, as to HSBC's direct mortgage-based claim (including its assertion of subrogation rights), we are laboring both in the garden of the ordinary *and* with real estate issues completely controlled by *Bridge*; *Columbia Gas* and *Universal Bonding* are not fitting precedent. The trustee, as a BFP, is thus able to void the bank's direct equitable lien/subrogation claim.

3.    **How Does the Applicable Law Affect the Claim of Constructive Trust in the Property?**

(a)    Recording Statutes.

The most commonly applied New Jersey recording statutes, N.J.S.A. 46:16-1[17] and 22-1,[18] do not appear to control the constructive trust contention of Capazzi (as adopted by the bank).    However, as will be seen, *statute of frauds* application creates a tie-in to recording.    It is a well-worn generality that constructive trust beneficiaries and equitable interest holders possess no instrument susceptible to recording under N.J.S.A. 46:16-1.[19]    They are thus "saved" from the interest-invalidating effects of the recording scheme relative to subsequent judgment creditors without notice and BFPs.    Being so saved does not, *L.D. Patella* notwithstanding, dictate the

---

[17]N.J.S.A. 46:16-1.        Noninclusive enumeration of instruments entitled to record

All deeds or instruments of the nature or description hereinafter in this section enumerated, of or affecting the title to real estate in this State, may be acknowledged or proved and then recorded in the office of the county recording officer of the county wherein the real estate is situate:

. . .

b. Mortgages, defeasible deeds or other conveyances in the nature of a mortgage;

. . .

[18]N.J.S.A. 46:22-1.        Failure to record or register deeds or instruments; effect as to subsequent judgement creditors, purchasers and mortgages

Every deed or instrument of the nature or description set forth in section 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

[19]Further consideration should be given N.J.S.A. 46:16-1.1 and 2, which provide mechanisms for recording other writings, including nonmonetary judgments affecting real property.

17

supremacy of these products of equity.  Common law must be applied (as well as other

applicable statutory law).

      (b)    <u>Common Law</u>.

    In summary, "[i]n the absence of an applicable recording statute, or facts giving rise to

estoppel, priority among competing claims against the same [real] property is generally

determined either by the rule 'first in time, first in right' or by application of the doctrine of bona

fide purchase."  *Weinstein,* § 10.2 at 538 (footnote including substantial citations omitted).  The

trumping position given to *bona fide purchasers* over preexisting equitable interest holders in

real property is historic.  *Id.* at 539-40.[20]  Again, focusing on real property and the BFP status of

the trustee in bankruptcy per § 544(a)(3), a general priority is afforded the trustee who is assumed

---

[20]The treatise is rich with the variations and nuances which shape the law of mortgages (and more generally, real property).  Its § 10.2 at 540 n.6 both supports the superiority of the BFP and refers to four bankruptcy cases as follows:

> See Howard v. Diolosa, 241 N.J. Super. 222, 574 A.2d 995, 1000 (App. Div. 1990) ("A purchaser or mortgagee for value without notice, actual or constructive, acquires a title or lien interest free from all latent equities existing in favor of third persons."); In re DeLauro, 207 B.R. 412 (Bkrtcy. D.N.J. 1997) (equitable interests not created by a recordable instrument are valid as against subsequent judgment creditor without notice); and Matter of Pearl, 40 B.R. 860, 864-65 (Bankr. D.N.J. 1984), reciting the foregoing proposition. . . .

> But see In re L.D. Patella Const. Corp., 114 B.R. 53, 58 (Bkrtcy. D.N.J. 1990) where the court held that under New Jersey law, equitable interests not created by a recordable instrument are valid as against subsequent judgment creditors without notice as well as against subsequent bona fide purchasers.  This proposition was also repeated in, In re Bridge, 18 F.3d 195, 203 n.6 (C.A. 3d 1994), citing *Patella* supra.  *As to subsequent bona fide purchasers, this proposition appears incorrect.*  [Emphasis added.]

to have given value and taken without notice of interests not "of record."[21] *See Bridge*, 18 F.3d at

204 (regarding value and notice of only that which a title search would reveal).[22]

        (c)     <u>Statute of Frauds</u>.

This adversary proceeding, and much of the garden-variety prototypes where (not

uncommonly) parol trusts in *real estate* are alleged, are controlled by the revised New Jersey

Statute of Frauds, N.J.S.A. 25:1-14.  That dispositive provision is as follows:

> 25:1-14.      Effect of unwritten transactions
>
> Transactions involving an interest in real estate, and agreements to
> transfer an interest in real estate or to hold an interest in real estate for
> the benefit of another, which are not established in a writing, are not
> effective against bona fide purchasers for valuable consideration
> without notice or against lienors without notice.

This statutory provision became effective January 5, 1996 and is said to have been intended to

reverse *Zwaska v. Irwin,* 52 N.J. Super. 27, 35 (Ch. Div. 1958).  See *Weinstein,* § 10.5.  The

Capazzi-based allegations (i.e., that debtor Day was only holding title for the benefit of Durie,

LLC) thus fail as a matter of law in the face of this statute.

    4.    **Bankruptcy Case Law.**

*Bridge* (as expressed earlier) is decisive precedent for the § 544(a)(3) avoiding power of

the trustee as a BFP of real estate when confronting the holder of an *unrecorded preexisting*

---

[21]The reintroduction of the recording statutes is obvious here.  *See Weinstein,* §§ 10.3 and 10.7.

[22]To the extent that *Weinstein,* §10.6 at 576 n.6, is interpreting *DeLauro,* its statement that *– in
that matrimonial dispute setting and particular factual context –* "the constructive trust is valid against
the trustee's avoidance powers," is understandable; the note goes on to posit as to a constructive trust
which is not recordable the general priority afforded the BFP (see the treatise's § 10.2) and the effect of
N.J.S.A. 25:1-14 (see paragraph immediately following).  This court disagrees with any interpretation of
§ 544(a)(3) positing trustees as being *other than* "for value" interest holders, and being without notice
(except for ordinary course record notice).

*mortgage.* The voiding effect under New Jersey common law (citing *Gaskill v. Wales* and its progeny) persists by virtue of the BFP taking "free from all latent equities existing in favor of third persons." *See Bridge*, 18 F.3d at 203-04, as to the effect or potential effect of the recording act, N.J.S.A. 46:16-1 and 22-1 (but take note of the criticism of n.6, *L.D. Patella's* overstatement).

Logically, *Bridge* should also be persuasive (if not completely dispositive) as HSBC argues Capazzi's constructive trust proposition. The BFP's prime position historically under New Jersey common law should be sufficient to void a purported parol "constructive" trust.[23]

The *DeLauro* case of this court implicates the constructive trust in a frequently occurring context, the intersection of bankruptcy and family law. Following a judgment of divorce which incorporated an agreement which included the husband's commitment to transfer certain real property and a motor vehicle to the wife,[24] the husband filed a Chapter 7 petition in bankruptcy. He had failed to complete the conveyances. The trustee claimed for the estate in bankruptcy the real estate which remained "of record" in the debtor's name as of the petition date. In finding for the nondebtor spouse, the court relied on New Jersey law to impress a constructive trust on the real estate and vehicle which were to be conveyed per the judgment of divorce.

---

[23]Again, as to statutory law, though the recording act sections N.J.S.A. 46:16-1 and 22-1 do not apply (because of the nonwritten aspect of the trust understanding as claimed), the 1996 revision to New Jersey's Statute of Frauds at N.J.S.A. 25:1-14 would be conclusive for the trustee. If there were an unrecorded *written* trust, then the recording act would support the trustee.

[24]The trustee argued § 544(a)(1) (and (a)(3)), as well as property of the estate precepts, the effects of N.J.S.A. 46:22-1 (failure to record deeds), and failure to record the vehicle title with the Division of Motor Vehicles.

After imposing, postpetition, the constructive trust, the court did the following (insofar as the analysis here is concerned):

      (i)     Disabused the trustee of his recording act argument per N.J.S.A. 46:16-1 and 22-1 ("Unsurprisingly, constructive trusts which are imposed by the courts, rather than created by written instrument, are not covered by N.J.S.A. 46:16-1"), 207 B.R. at 416; and

      (ii)    Relied upon *Quality Holstein Leasing* to elevate § 541(d) over § 544(a), 207 B.R. at 417.

This structuring of the decision is supported by precedent in each of its components. The result is undeniably equitable. However, a parallel analysis perhaps yielding the same result is worth considering.

The prepetition judgment of divorce was presumably docketed in the Superior Court of New Jersey. There is nothing in the record to indicate that it was further *recorded* as a deed of conveyance pursuant to N.J.S.A. 46:16-1.1.[25] As a docketed but unrecorded nonmonetary

---

[25]This section is as follows:

46:16-1.1    Decrees of former chancery court and final judgments affecting real estate; recording as deeds; indexing

Certified copies of final decrees of the former Court of Chancery, *final judgments of courts of record of this State* and of the United States and certified copies of declarations of taking and of reports of condemnation commissioners which have been filed with the Clerk of the Superior Court or with the Clerk of the United States District Court *relating to or in any way affecting title to real estate may be recorded as deeds of conveyance* in the office of the county recording officer of the county wherein the real estate is situate, and shall be indexed in the names of the parties to the cause as set forth in the decree, judgment, declaration of taking or report of commissioners which when recorded shall from that time be notice to all subsequent judgment creditors, purchasers and mortgagees of the existence and contents thereof. [Emphasis added.]

judgment, did it provide constructive notice to subsequent judicial lien creditors and purchasers

of the subject *real estate*[26] (including the hypothetical creditor and purchaser per §§ 544(a)(1)

and (a)(3))? If so, that constructive notice would destroy the status benefits granted to

subsequent real estate interest holders (particularly the would-be BFP avoidance power) under

both common law and the recording act. Alas, the answer is anything but straightforward.

Implicated, at a minimum, are: *Sonderman v. Remington Const. Co., Inc.*, 127 N.J. 96 (1992);

*Gibau v. Klein*, 329 N.J. Super. 227 (App. Div. 2000); the aforereferenced N.J.S.A. 46:16-1.1;

and N.J.S.A. 2A:16-7. This latter statute, calling for conveyancing by operation of law of real

estate ordered to be conveyed by a Superior Court judgment in the event of noncompliance by the

so ordered party, provides:

> When a judgment of the superior court shall be entered for a
> conveyance, release or acquittance of real estate or an interest therein,
> and the party against whom the judgment shall be entered shall not
> comply therewith by the time appointed, or within 15 days after entry
> of the judgment if no time be appointed therein, the judgment shall be
> considered and taken, in all courts of the state to have the same
> operation and effect, and be available as if the conveyance, release or
> acquittance had been executed conformably to the judgment, and this
> notwithstanding any disability of such party by infancy, lunacy,
> coverture or otherwise.

As explained in *Gibau,* the New Jersey Supreme Court decided that *nonmonetary*

judgments in court dockets need *not* be searched – in effect nullifying constructive notice via

such a docketed judgment and limiting the effect of the conveyancing act just quoted to its

impact on immediate parties, not third parties. *Sonderman*, 127 N.J. at 110; *Gibau*, 329 N.J.

Super. at 232. Its notice effect would be derived from *recording* in the book of deeds per

---

[26]The vehicle issues must be analyzed separately (an analysis not undertaken here).

N.J.S.A. 46:16-1.1. (Monetary judgments are treated differently and their presence on a court docket would traditionally be searched and reported.) But, as *Gibau* opines, where *family law equitable distribution* is the foundation for a nonmonetary judgment affecting real property, historic matrimonial case law renders conveyances operative as of the judgment date. (Whether this position will be sustained by the New Jersey Supreme Court is unknown, but *Gibau* has been guidance in this area for over a decade.) On its facts, *Gibau* dealt with judgment creditors of the defaulting spouse who acquired their liens following the judgment of divorce. Indeed, the case could be limited to contests with judgment lien creditors, not BFPs. Expanding *Gibau* where a BFP is competing with the nondebtor spouse (an untested application) would yield either (i) constructive notice (impacting negatively on the would-be BFP), or (ii) title (*both* legal and equitable) residing in the nondebtor spouse by virtue of the docketing of the judgment of divorce, thus leaving no property for the estate. Though no constructive trust imposition is necessary under this expanded scenario, the gymnastics and uncertainty in taking this route could impel one seeking an equitable resolution to take, cautiously, the trust approach.[27]

Whether one should impose, postpetition, a trust on the real estate under the *DeLauro* circumstances (and relate its existence back to the entry of state court judgment or earlier), or view the judgment as having either: (i) created that trust; (ii) served as an actual conveyance; or (iii) provided constructive notice, can be debated. The significant point is that a prepetition matrimonial judgment ordering the conveyance of real property should be honored by the bankruptcy court as the "applicable law" would honor it unless the Code requires otherwise.

---

[27]Of course, practitioners should consider *recording* such real estate affecting judgments of divorce per N.J.S.A. 46:16-1.1 (not simply *docketing* them) to maximize client protection.

What *DeLauro* does not do – and what HSBC would ask of this court *sub judice* – is to strike out

on its own, by first creating a constructive trust not linked to an earlier judgment (but related

back to events prepetition) and then engaging in the trumping of the trustee-BFP.  That request

runs afoul of the applicable New Jersey Statute of Frauds (N.J.S.A 25:1-14) and historic New

Jersey common law favoring the BFP over secret lien holders.

*DeLauro* and *Bridge* are familiar to bankruptcy courts as real estate/equitable interest

prototypes.  *Consolidated Gas* and *Universal Bonding* are more exotic examples of the

intersection of personal property law and claims of equitable interest in bankruptcy.  Since the

urge to apply the non-real estate cases to fact patterns involving real estate has not been readily

resisted by courts – though there is ample reason studiously to maintain separation – a

meaningful but more ordinary non-real estate case deserves consideration.

*In re Globe Store Acquisition Co., Inc.*, 178 B. R. 400 (Bankr. M.D. Pa.1995) is a

personal property prototype which, among other things, reflects a much quoted legislative history

segment related to § 541(d).[28]  In *Globe*, the debtor, a large local department store, had collected

utility bill payments as an accommodation to its customers.  The store also helped a local

nonprofit theater by selling its tickets and, whether on the store's sale of tickets or otherwise,

collecting customer payments due the theater.  When the department store became a debtor in

---

[28]Section 541(d)'s limitation on the breadth of property of the estate has been illustrated as
follows: "if the debtor has incurred medical bills that were covered by insurance, and the insurance
company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the
payment was reimbursement," a "constructive trust" would apply and § 541(d) would impact to narrow
property of the estate.  H.R. REP. NO. 95-595, 95th Cong., 1st Sess. 368 (1977) *reprinted in* 1978
U.S.C.C.A.N. 5963, 6324 (emphasis added).  *See Columbia Gas*, 997 F.2d at 1059.  Technically, it would
appear that this illustration implicates *resulting trust* concepts.

bankruptcy, the utility bill and ticket sale proceeds were claimed as part of the estate in
bankruptcy, a claim contested by both the utility and the theater.

The utility's position was that a written agreement with a predecessor store established a
trust relationship and hence "the moneys received by the Debtor were trust funds and therefore
belonged to the beneficiaries of the trust, i.e., [the utility]." 178 B.R. at 401. The bankruptcy
court accepted this argument, relying on the written agreement and *resulting trust* concepts as set
forth in RESTATEMENT OF THE LAW OF TRUSTS (SECOND) § 404 and *Columbia Gas.*

The theater also posited its claim on a trust theory and the effect of § 541(d) in excluding
the ticket sale proceeds from the bankruptcy estate. However, "a more amorphous relationship
[existed] between the Debtor and the Theater" than between the utility and the store. 178 B.R. at
403. Not having the benefit of a written agreement, the theater relied on *constructive trust*
concepts (including unjust enrichment of the debtor) to support its position. The court rejected
the theater's trust claim, as follows:

> While we are mindful that an entity which receives something for no
> consideration, and not as a gift, is unjustly enriched, we are compelled
> to observe that if that were the only standard, then every creditor in
> every bankruptcy estate could claim to be the beneficiary of a
> constructive trust and therefore not subject to the distribution
> schedules outlined by the Bankruptcy Code.

*Id.* at 404.[29]

---

[29]

> Although the Debtor understood that it was obliged to pay the Theater for
> the tickets that it financed, this obligation appears to be no different than
> the duties the Debtor would have to pay its other suppliers of merchandise.

*Id.* at 404.

Again, though this thorough decision is well-connected to trust law (that is, a *resulting*

*trust* by implication), such conclusions require that proofs be "very clear." *Turro v. Turro*, 38

N.J. Super. 535, 540-41 (App. Div. 1956). *See generally Graham v. Onderdonk*, 33 N.J. 356,

363-64 (1960); *Hill v. Warner, Berman & Spitz, P.A.*, 197 N.J. Super. 152, 167-68 (App. Div.

1984); and, *In re Voorhees' Trust*, 93 N.J. Super. 293, 298-99 (App. Div. 1967).

5.    **What Standards or Guidelines Are Available to Bankruptcy Courts
       Presented with Constructive Trust/Equitable Interest Claims Against
       Bankruptcy Estates?**

Capturing the full interplay in bankruptcy of equitable interests and legal interests, in

everything real and personal, is somewhat beyond the scope of this opinion. Nevertheless, some

modest suggestions for future bankruptcy decision makers are in order when equitable interests

are alleged (as here), and particularly when the constructive trust is at issue. Consider the

following:

(i)    Ascertain early on whether there is any value to precedent on the "other side" of

       the personal property/real property divide; flying off into the ether, e.g., on a

       personal property precedent in a real property case, can quickly deflect a court

       from the appropriate applicable law;[30]

(ii)   Heed the advice cautioning restraint in *initiating* constructive trust determinations

       postpetition;[31]

---

[30]Consider the detour in *Bridge* occasioned by the bank's reliance on *Kaplan*, 164 N.J. Super.
130 (App. Div. 1978), a case involving two creditors contesting rights as lien creditors in a motor
vehicle.

[31]The Sixth Circuit's admonition in *In re Omegas Group, Inc.*, 16 F.3d 1443, warning of the
destructive effect on ratable distribution occasioned by the imposition of a constructive trust by the
bankruptcy court, should be given full consideration. Yet, as in *DeLauro*, there are circumstances where

(iii)    Scrutinize dicta and recycled dicta for their applicability and overbreadth,

particularly in this nuanced and intricate area (which requires attention to the

detail of real or personal property law);[32]

(iv)    Avoid overstatement and sweeping noncontextual conclusions when dealing with

such historic concepts as BFP or judgment lien creditor rights;[33] and

(v)    Seek out a comprehensive view of the law before trying to design a tile in the

law's mosaic (as if it were independent of the bigger picture), including seemingly

arcane (and easy-to-miss) statutory provisions of the applicable law and case law

carving out specialized rules.[34]

---

the applicable law, a specialized context, and specific prepetition judgments could well justify
bankruptcy court recognition of constructive trusts.

[32]It is relatively easy to retreat to the sweeping language of *Quality Holstein Leasing* ("Section
541(d)'s limitation . . . prevails over . . . section 544"), 752 F.2d at 1013.  See reference to same, again as
dicta, in *Universal Bonding*, 960 F.2d at 372 n.2.  But the better course for analysis would seem to be in
reconciling the Code provisions by careful assessment of the applicable law in terms of competition
between equitable interests and the § 544(a) powers of the trustee.  *Bridge* did precisely this.

[33]It is all too easy to get focused on one area of complex real estate law, as in *L.D. Patella* with
the New Jersey recording act of N.J.S.A. 46:16-1 and 22-1, and overstate a legal precept.  While in that
case a brokerage agreement was not in the nature of a recordable instrument per N.J.S.A. 46:16-1, and
hence a BFP could not trump the broker *by virtue of N.J.S.A.46:22-1*, common law (*Gaskill's* principle)
would elevate the BFP.  *Bridge's* reference to *L.D. Patella*, 18 F.3d at 203 n.6, should not be read as
*adopting* the bankruptcy court's overstatement; otherwise, *Bridge* in recognizing and relying on the clear
primacy of the BFP would be internally inconsistent.

[34]In this jurisdiction the courts are fortunate to have available the Weinstein treatise; heavy as the
sledding is through its incredible detail, it nonetheless diligently gathers together the threads of mortgage
law (and, more generally, real estate law) in one place at one time.  It reminds us, e.g., of the impact of
the 1996 addition to the Statute of Frauds which is here determinative (N.J.S.A. 25:1-14); it details the
*specialized aspects of matrimonial law* (e.g., *Gibau*, 329 N.J. Super. 227, its analysis of nonmonetary
judgments affecting real property in the family law context and its interpretation of the easy-to-overlook
old conveyancing statute at N.J.S.A. 2A:16-7); and, it discreetly points out where it believes courts have
been incorrect.

## IV.    <u>CONCLUSION</u>

HSBC, asserting its equitable lien position and related subrogation to the rights of a prior

mortgagee whose loan was paid off with HSBC funds, cannot overcome the trustee's avoidance

power as a BFP of the subject real estate pursuant to Code § 544(a)(3).  HSBC took a mortgage

which was defective in that it was from a would-be owner who, in fact, never obtained title.  The

bank's intent was to take a recordable instrument, and indeed it took an instrument of a *type*

which would be recordable under N.J.S.A. 46:16-1.  Since the mortgage was *not* recorded, a BFP

(for value and without notice of the mortgage – characteristics of the § 544(a)(3) hypothetical

purchaser) would prevail per N.J.S.A. 46:22-1, which voids the unrecorded mortgage and

resolves HSBC's equitable lien-based claim in favor of the trustee.  *Bridge* is the controlling

precedent.

As a parallel matter, the historic common law emanating from the 1883 *Gaskill v. Wales*

decision supports the trustee as a BFP, independent of the recording act.

HSBC's effort to promote Capazzi's oral constructive trust argument is a nonstarter,

given the New Jersey Statute of Frauds clear avoidance of such parol.  *See* N.J.S.A. 25:1-14.

Likewise, as with HSBC's direct argument, the common law of New Jersey favors the BFP over

the alleged constructive trust beneficiary under the facts of this case.

28

In light of these conclusions of law based upon facts viewed most favorably to the

defendants, there is no material issue of fact or law for trial, and summary judgment is granted to

the trustee. An implementing order of judgment will be issued.

Dated:  February 2, 2011

MORRIS STERN
United States Bankruptcy Judge